UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

Jo Ann Hodges Reynolds
*a/k/a* Jo Ann H Reynolds
*a/k/a* Joann H Reynolds
*a/k/a* Jo Ann Hodges Reynolds
*a/k/a* Jo Ann Reynolds-Hodges                    Case No.: 23-70879-AST
*a/k/a* Joann Reynolds                             Chapter 13
*a/k/a* Joan Hodges-Reynolds
*a/k/a* JoAnn Reynolds
*a/k/a* Jo A Hodges Reynolds,

                              Debtor(s).
-------------------------------------------------------------------x
Jo Ann Hodges Reynolds,

                              Plaintiff(s),          Adv. Pro. No. 24-8027-AST
        -against-

County of Suffolk,
                              Defendant(s).
-------------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT SETTING ASIDE A TAX LIEN SALE AS A FRAUDULENT TRANSFER

*Issues Before the Court and Summary of Ruling*

Debtor Jo Ann Hodges Reynolds ("Debtor" or "Reynolds") lost title to her former residence following her failure to pay her property taxes. She commenced this proceeding to recover title to her home, now held by Suffolk County (the "County"). Pending before this Court are cross-motions for summary judgment filed by Reynolds and the County (the "Cross Motions"). Reynolds' motion ("Reynolds' Motion") seeks a determination that the transfer of her residence to the County through a tax deed recorded on January 28, 2022 (the "Transfer") was a fraudulent transfer under 11 U.S.C. §§ 522(h) and 548(a)(1)(B), and that the Court, *inter alia*, (i) avoid the

Transfer of title to the County, (ii) restore title to Debtor, and (iii) mandate the County accept the payment of tax arrears from the Chapter 13 Trustee over the life of Debtor's proposed Chapter 13 Plan. The County's motion ("County's Motion") seeks dismissal of the adversary proceeding with prejudice on the grounds that, *inter alia*, (i) Debtor was not rendered insolvent by the Transfer, and (ii) that the County's statutory framework (a) forecloses any unconstitutional taking as enunciated by the Supreme Court in *Tyler v. Hennepin County*, 598 U.S. 631, 634 (2023) and (b) prevents the possibility of a transfer being for less than reasonably equivalent value under § 548(a)(1)(B)(i).

This Court recently dealt with a similar issue, where it held that the transfer of a debtor's $650,000 home to satisfy a $1,8148.48 tax lien was a fraudulent transfer. *In re Miranda*, 667 B.R. 386 (Bankr. E.D.N.Y. 2025), *aff'd, Miranda v. TLB 2019 LLC*, No. 25-CV-533 (ENV), 2025 WL 1530575 (E.D.N.Y. May 29, 2025).

For the reasons to follow, the Court grants Reynolds' Motion and denies the County's Motion.

### *Jurisdiction*

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 157(b)(2)(E) and (H) and 1334(b), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by the Order dated December 5, 2012.

### *Factual and Procedural History*

Reynolds is an individual that, at all pertinent times herein, resided at 41 Fairview Circle, Middle Island, NY 11953 (the "Property"). Reynolds failed to make property tax payments due to

the County for tax years 2017 and 2018, resulting in a tax lien being placed on the Property in the amount of $18,453.95 (the "Tax Lien").

On January 14, 2022, the County obtained title to the Property through a tax deed (the "Tax Deed") recorded on January 28, 2022.

On March 14, 2022, the County served a redemption notice on Reynolds by certified mail (the "Redemption Notice"). The Redemption Notice states, *inter alia*:

> Please be advised that the above referenced property has been sold to the County of Suffolk as a result of real property taxes having not been paid. A deed was issued to County of Suffolk and recorded on Jan. 28, 2022. If you are the prior reputed owner ("P.R.O.") or mortgagee(s), pursuant to Local Law No. 16-1976, you may have the right to redeem this property and regain title. An application for redemption must be submitted by JULY 28, 2022.

On July 19, 2022, the County received a redemption application for the Property submitted by Reynolds. On August 16, 2022 the County sent Reynolds a "60-day Notice" by certified mail which informed Reynolds she must submit a certified bank check by no later than October 15, 2022 in the amount of $16,337.51 payable to the Suffolk County Comptroller to complete her redemption. The County then sent a letter to Reynolds dated October 14, 2022 extending the payment deadline to December 14, 2022. A second extension letter dated December 14, 2022 further extended the payment deadline to January 31, 2023. A third letter dated February 23, 2023 again extended the deadline to April 16, 2023. On April 17, 2023, the deadline was extended for a fourth time through June 16, 2023. A fifth and final extension letter was issued on June 15, 2023, extending Reynolds' time to pay the Comptroller through July 19, 2023. A courtesy letter was sent July 14, 2023, reminding Reynolds of the July 19 deadline. Despite all of these extensions and reminders, Reynolds failed to pay.

Reynolds ran out of statutory opportunities for redemption on July 28, 2024, 30 months from the date the County recorded the tax deed. Suffolk County Code § 29 and County Law § 215 respectively give homeowners six months from the date the County records the deed for standard redemption, and then an additional twenty-four months to apply for a hardship request.

The Property is Debtor's most substantial asset, having a value of $259,400.00 at or around the time of Transfer.[1]

Reynolds commenced her bankruptcy case on March 15, 2023 by filing a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). [Dkt. 1].

The Chapter 13 Trustee has not attempted to set aside the transfer and acknowledged, without objection, that Debtor had retained counsel to pursue the instant fraudulent conveyance action.

On March 28, 2024, Reynolds commenced this adversary proceeding, seeking a determination that the Transfer of the Property to the County was a fraudulent transfer under 11 U.S.C. §§ 522(h) and 548(a)(1)(B), and thus avoidable. [Adv. Pro. Dkt. 1].

On April 12, 2024, the County filed its answer. [Adv. Pro. Dkt. 4].

On May 2, 2025, the County filed its Motion. [Adv. Pro. Dkt. 14].

On May 6, Reynolds filed her Motion. [Adv. Pro. Dkt. 15].

On June 3, the Reynolds filed opposition to the County's Motion.  [Adv. Pro. Dkt. 16].

On June 3, the County filed opposition to Reynolds' Motion.  [Adv. Pro. Dkt. 17].

---

[1] This valuation comes from Debtor's Schedule D. Debtor urges the Court to use a $279,000 valuation from a Broker's Opinion dated August 2, 2024. The Court will adopt the $259,400.00 figure used at the time of the petition for the reasons to follow.

The County has not disposed of the property nor transferred the Tax Deed. However, it has reserved the right to auction the Property to the public.

*Discussion*

### A. *The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *See id.* at 322–23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex*

*Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001).

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other. *See In re Zerbo*, 397 B.R. 642, 647 (Bankr. E.D.N.Y. 2008) (citing *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *In re Rodriguez,* 50 B.R. 576 (Bankr. E.D.N.Y. 1985) ("[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed")). As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v. Peters,* 386 F.Supp.2d 495, 497 (S.D.N.Y. 2005); see also *Considine v. Schachter (In re Schachter),* No. 05–9404, 2007 WL 2238293 (Bankr. S.D.N.Y. Aug. 1, 2007).

### B. Reynolds has Standing to Bring a Fraudulent Transfer Action

Section 522(h) of the Bankruptcy Code provides in pertinent part:

> The debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> > (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> > (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

Reynolds did claim the Property as exempt under section 522(b) and the Trustee does not intend to set aside the Transfer. Further, Reynolds's "could have exempted such property under

subsection (g)(1)." *See* 11 U.S.C. § 522(h); *see In re Miranda*, 667 B.R. 393-95. Thus, Debtor has standing to bring this action.

### C. *Takings Clause and Redemption*

The County argues that Suffolk County Administrative Code § A40-4(L) (the "Suffolk Code") offers taxpayers a mechanism to reclaim the equity in their homes, and that, as such, the County has avoided any potential Constitutional takings issue under *Hennepin*. The County is correct.

In *Hennepin*, a Minnesota county sold a taxpayer's home valued at $40,000 to satisfy a $15,000 tax debt pursuant to state law. 598 U.S.at 634. The county then retained the $25,000 excess funds from the sale. *Id.* The taxpayer filed an action against the county alleging a Takings Clause violation as the county had "unconstitutionally retained the excess value of her home above her tax debt." *Id.* at 635; U. S. Const., Amdt. 5. The district court granted the county's motion to dismiss for failure to state a claim, and the circuit court affirmed. *Id.* at 636. The United States Supreme Court reversed, holding that the taxpayer had "plausibly alleged a taking under the Fifth Amendment." *Id.* at 647.

Suffolk County Administrative Code § A40-3(A) and (B) provides that after a tax deed has been taken by the County, an eligible person may apply for a redemption of the property within six months from the recording of the tax deed. Suffolk County Code § 29 and County Law § 215 then set forth that a person experiencing certain hardships may apply for a hardship request within 24 months of the expiration of the time allowed for the standard redemption. After the standard redemption and hardship request timeline have passed (30 months total from the date the tax deed was recorded), the County owns the property without any other opportunity for redemption. Once the County owns the property, it determines whether to transfer the property to a County agency

for a particular purpose or to dispose of the property. If the County opts to dispose of the property, the County may opt to hold a public auction.

If the property is sold at public auction, Suffolk County Administrative Code § A40-4(L) provides that for the prior owner may apply in writing for a distribution of the surplus. Further, § A40-4(G) requires that all parcels approved for sale at public auctions, with limited exceptions, "shall be offered for sale to the highest bidder at public auction . . . ." After the property is sold, § A40-4(L)(1), in relevant part, then defines the surplus as "the sum of the amount of the sale at public auction minus the total amount of taxes due plus interest, penalties, and other charges …."

The Supreme Court in *Hennepin* required only that taxpayers were able to reclaim the equity in their homes, and did not specify the mechanism used to achieve that goal. Here, the Suffolk Code provides such a remedy on its face, whether or not the property is sold at public auction.

However, compliance with the Takings Clause of the US Constitution does not automatically mean that the transfer was not fraudulent under the Bankruptcy Code. *See In re Miranda*, 667 B.R. 396-97 (holding that a transfer was fraudulent under the Bankruptcy Code after determining res judicata prevented debtor from arguing the underlying transfer was an unconstitutional taking). While the Suffolk Code provides a mechanism for homeowners to retrieve their equity after a tax deed transfer, that event could be years later and does not guarantee homeowners will receive reasonably equivalent value for their homes at the time of the Transfer.

Further, while the parties disagree as to whether redemption is still available, the Court need not reach that issue as the Transfer is avoidable as a matter of law, as discussed *infra*.

### D. Section 548 Fraudulent Transfer

"The Bankruptcy Code empowers debtors to set aside a transfer of property if (1) the debtor

had an interest in property; (2) a transfer of that interest occurred on or within two years of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received 'less than a reasonably equivalent value in exchange for such transfer[.]'" *Gunsalus v Cnty. of Ont.*, 37 F.4th 859, 864 (2d Cir 2022) (citing 11 U.S.C. §§ 548(a), 522(h)).

Here, these is no dispute that Reynolds had an interest in the property before the Transfer and that the Transfer occurred within two years of the petition.

### i.     § 548(B)(ii)(I) Insolvency

The parties disagree on whether Reynolds was either insolvent on the date of the Transfer or was rendered insolvent by the Transfer itself. The Bankruptcy Code defines insolvent, in relevant part, as meaning that

> (A) … financial condition such that the sum of such entity's debts are greater than all of such entity's property, at a fair valuation, exclusive of –
>
> (i) property transferred, concealed or removed with intent to hinder, delay or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under Section 522 of that title . . . .

11 U.S.C. § 101(32).

In her declaration, Debtor claims that her financial status at the time of the petition closely reflected her financial status at the date of the Transfer. The County does not dispute this assertion and further incorporates this fact into its own argument.

Debtor argues she was left with $15,695 (the value of her personal property) in assets after the Transfer, pointing to Schedule A/B Line 62. Then, using the liabilities listed on the Court's Claims Register but deducting Reynolds' counsel's legal fee claim and the now-satisfied tax lien, Debtor argues her total liabilities are $116,504.70.

Debtor erroneously uses the Transfer to eliminate the entire value of all of her real property on Schedules A/B. She fails to include the $28,100 value of the South Carolina real property she lists on her petition. Therefore, her actual assets as set forth in Schedules A/B are $43,795 excluding the transferred Property.

The County's starting point is the original $303,195 in assets and $32,137 in liabilities listed on Debtor's Schedules. The County then correctly arrives at $43,795 for assets in its calculation. When calculating Debtor's liabilities, the County then urges the Court to deduct the $22,000 in additional real estate tax liabilities, as they are not a personal liability of Debtor, and then find Debtor's total liabilities to be $11,658.

However, the County fails to include any proofs of claim that were filed by any creditors listed in Debtor's schedules. For example, Debtor listed the Internal Revenue Service ("IRS") as a creditor in her schedules with an unknown, unsecured claim. By proof of claim dated April 5, 2023, the IRS filed an amended $76,679.53 secured claim. A properly filed proof of claim creates prima facie evidence of the debt and lien status. *See* 11 U.S.C. §§ 501, 502. Thus, with or without the $28,100 reduction in liabilities the County seeks, Debtor was rendered insolvent by the Transfer.

As such, the Transfer rendered Debtor insolvent as a matter of law.

  *ii.*  *§ 548(B)(i) Reasonably Equivalent Value*

In determining whether a transfer is for "reasonably equivalent value," courts consider "whether the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548 (1994). This standard does not require a property to be transferred for market value; for example, a foreclosure sale "properly conducted under applicable state law, conclusively establishes reasonably equivalent value for

purposes of § 548(a)." *In re Zerbo*, 397 B.R. at 653; *see also BFP*, 511 U.S. at 538-39.

This Court discussed in detail in *Miranda* that the transfer of a substantial asset for a *de minimus* value, without the protections of judicial oversight or market forces, is not a transfer for reasonably equivalent value.

Here, Property worth $259,400 was transferred to the County for a tax lien debt of $18,452.95. The County tries to distinguish *Miranda* by pointing out that the Property was never sold to a third party and that the Suffolk Statute preserves the surplus for Debtor. However, the fact that the Property has not been sold to a third party means Debtor's right to receive the excess value has not been triggered. Without a public auction or third-party buyer, there has not been an opportunity for market forces to allow Debtor to receive reasonably equivalent value. Further, the administrative process created by the Suffolk Code does not provide judicial oversight in obtaining fair or reasonably equivalent value.

As such, the Transfer was not for a reasonably equivalent value as a matter of law.

Therefore, because Reynolds had an interest in the property, the transfer occurred within two years of the bankruptcy petition, the transfer rendered Reynolds insolvent, and Reynolds did not receive reasonably equivalent value, the Transfer is a fraudulent transfer as defined by section 548(a). As such, the Transfer is avoidable as a matter of law. Once the Property is vested in Debtor, she shall be required to pay the Tax Lien debt in full, with applicable interest, over the life of her chapter 13 plan.

*Conclusion*

For the reasons set forth herein, Reynolds is entitled to judgment as a matter of law. A judgment consistent herewith shall be issued.



Dated: August 20, 2025
      Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge